Filed 4/26/23 Waterwood Enterprises v. City of Long Beach CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| WATERWOOD ENTERPRISES, LLC, Plaintiff and Appellant, v. CITY OF LONG BEACH, Defendant and Respondent. | B316269 (Los Angeles County Super. Ct. No. NC060787) |

APPEAL from orders of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Affirmed with instructions.

Stuart Kane, Donald J. Hamman and Eve A. Brackmann for Plaintiff and Appellant.

Amaro Baldwin, Michael L. Amaro and Sanaz Cherazaie for Defendant and Respondent.

_____

In *Hsu v. Abbara* (1995) 9 Cal.4th 863 (*Hsu*), our Supreme Court held: "[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" (*Id.* at p. 876.)

In the prior appeal involving the same parties—Waterwood Enterprises LLC (Waterwood) and the City of Long Beach (the City)—we reversed the trial court's finding that the City was the prevailing party. Relying on *Hsu*, we remanded the case for the trial court to determine in its discretion whether Waterwood prevailed on the parties' contract or whether there was no prevailing party. (*Waterwood Enterprises, LLC v. City of Long Beach* (2020) 58 Cal.App.5th 955 [*Waterwood I*].) We remanded the case to the trial court because Waterwood, "the ostensibly prevailing party receive[d] only a part of the relief sought.' [Citation.]" (*Hsu, supra*, 9 Cal.4th at p. 875.)

Upon remand, a judicial officer (Judge Mark Kim) different from the one who presided over trial (Judge Patrick Madden), found there was no prevailing party. Waterwood appeals again, arguing that the trial court (Judge Kim) abused its discretion in finding no prevailing party. In doing so, Waterwood emphasizes the evidence most favorable to it and ignores the evidence supporting the trial court's decision and thus also ignores our highly deferential standard of review. We reject Waterwood's argument that the trial court (Judge Kim) relied solely on

2

improper criteria, namely the first judicial officer (Judge Patrick Madden)'s statement of decision, portions of which we rejected in *Waterwood I*. Ultimately, Judge Kim agreed with Judge Madden's view that Waterwood did not achieve its litigation objectives as disclosed from the sources approved in *Hsu*—a finding consistent with our instructions in *Waterwood I*.

Because Waterwood was not the prevailing party in the underlying litigation, it is not entitled to attorney fees incurred on appeal in pursuing *Waterwood I*. Fees based on prevailing party status are awarded to the party prevailing in the entire lawsuit, not a discrete portion of it. In contrast, the trial court erred in not entering judgment on Waterwood's unopposed costs from *Waterwood I*, as described in Waterwood's memorandum of costs.

The trial court's orders denying Waterwood attorney fees incurred in the trial and appellate courts are affirmed. The trial court is directed to enter judgment on costs in favor of Waterwood.

## BACKGROUND

### 1. *Events preceding trial*

In 2005, the City and Waterwood entered into a 10-year lease. The lease includes an attorney fee provision.

On August 29, 2016, Waterwood filed a complaint alleging a single cause of action for breach of contract. Waterwood alleged the City failed to pay for repairs to the roof, rendered the HVAC (heating, venting, and air conditioning) system inoperable, damaged the concrete and fence on the property, broke an electrical conduit, allowed grass to grow, which damaged the asphalt, and allowed grass to grow in areas containing concrete.

3

Waterwood further alleged that it was damaged "in an amount according to proof, but which is believed to be in excess of $150,000."[1] Waterwood additionally sought payment of attorney fees and costs.

In its answer, the City generally denied the allegations and asserted 18 affirmative defenses.

The parties' joint statement of the case recited: "When Plaintiff [Waterwood] purchased the property from Defendant [the City] in 2005, Plaintiff leased it back to Defendant under a written lease that expired in October 2015, after a period of 10 years. [¶] Plaintiff contends that according to the Lease, Defendant City of Long Beach, had certain obligations to maintain and repair the property, and when it vacated, Defendant was required to deliver possession 'broom clean and in the same order and condition' as the property was in at the outset of the lease, 'reasonable wear and tear excepted.' Plaintiff Waterwood also contends that the City did not properly maintain and repair the property during the ten-year term of the lease and return it in the same condition as the property was in at the outset of the lease, reasonable wear and tear excepted. Accordingly, Plaintiff alleges that the City breached the lease terms, and seeks damages for the repairs and replacement necessary to return the property to the same condition as it was in at the outset of the lease, reasonable wear and tear excepted."

The joint statement also stated: "The City contends that it performed all of the repairs and maintenance required under the lease, and any repairs or maintenance that were not so completed

---

[1] In its government claim filed with the City, Waterwood asserted its damages were $137,950.56.

4

were the result of reasonable wear and tear over the 10 year lease term.  Defendant denies that it breached the lease terms."

## 2.    *Jury trial*

Judge Patrick Madden presided over a 10-day trial.  Our record of the trial proceedings is limited.  For example, we do not have transcripts from the jury trial that led to our first opinion.  As explained in our Discussion, we reject the City's efforts now to augment the record with transcripts the trial court did not have in determining, on remand, that there was no prevailing party.

The parties appear to agree that at trial, Waterwood's expert indicated the City owed Waterwood $224,000 in damages.  Citing that expert's estimate summary reflected on a chart attached to the expert's deposition, the City points out Waterwood's expert claimed the City owed Waterwood $224,150 consisting of work on the masonry structure, roof, heating, venting, and air conditioning, electrical issues, paving, concrete, fences, gates, and walls.  The chart does not further describe the repairs Waterwood claimed were the City's responsibility.  In addition to the costs for these items, Waterwood's expert also opined that the City was responsible for contractor's overhead, contractor's profit, insurance, a bond, a "contingency on construction costs," construction management, architect design, engineering design, testing inspection and permit fees.  (Capitalization omitted.)  Citing the same estimate summary chart, Waterwood acknowledges that its "expert claimed *at trial* to [*sic*] hard costs of $170,000, and with soft costs and contingency, to be $224,000."  (Italics added.)

The jury found in Waterwood's favor and awarded $45,050 in damages.  In a special verdict, the jury answered the following question affirmatively:  "Did Defendant, City of Long Beach,

breach the written lease contract?"  The jury concluded the breach was a substantial factor in causing Waterwood's damages. The special verdict did not address the City's affirmative defenses.

3.      *The trial court awards costs to Waterwood and attorney fees to the City*

After trial, both parties filed motions for attorney fees based on the attorney fee provision in the lease.  The trial court (Judge Madden) evaluated the parties' settlement offers to assess which party achieved its litigation objectives.  The trial court described the contested items at trial as follows:  "The significant contested items were plaintiff's contention that:  (a) defendant was required to remove and replace an entire roof on one of the buildings; (b) defendant was required to replace two air conditioners; and (c) defendant was required to tear up and replace all of the existing asphalt parking lot on the property and nearby concrete pads.  As to these items, it was defendant's argument that the roof did not require replacement, because any deterioration was due to reasonable wear and tear.  As to the two air conditioners, defendant argued that neither air conditioner required replacement.  As to the condition of the asphalt, defendant admitted that plaintiff was entitled to recover some of its claimed damages to repair the asphalt, because some of the asphalt had deteriorated based on use that was beyond any reasonable wear and tear; however, defendant contended the City was not liable for the replacement cost of the entire parking lot or the concrete pads."

The trial court stated, "[E]xamining the parties' position during the trial, the City clearly succeeded on its claims and Waterwood did not. . . . Simply stated, the jury's verdict was very

6

good news to the City and terrible new[s] for Waterwood. Based on the litigation objectives of the parties, defendant is clearly the prevailing party." Pursuant to Civil Code section 1717 (section 1717), the court awarded the City attorney fees in the amount $172,375. With respect to costs, the court found Waterwood was the prevailing party and ordered the City to pay Waterwood's costs in the amount of $19,905.04.

The amended judgment provided: "Waterwood Enterprises LLC shall recover from Defendant, The City of Long Beach, interest on the damages of $45,050 at the rate of 10% per annum." The court added $1,987.06 in interest.

"The City of Long Beach shall pay to plaintiff Waterwood Enterprises LLC on all the above amounts the rate of 10% per annum from and after the date of the verdict until orders are entered on all post-trial motions, including motions for attorneys' fees and to tax costs, if any, and 7% per annum thereafter until the Judgment is paid in full."

### 4.    *Prior appeal*

Waterwood appealed, challenging the award of attorney fees to the City. We concluded the trial court erred in awarding the City attorney fees. (*Waterwood I*, *supra*, 58 Cal.App.5th at p. 958.) We explained that under section 1717, upon remand, the trial court had discretion to find no prevailing party or to find that Waterwood was the prevailing party. (*Waterwood I*, at p. 959.) We held the trial court erred inter alia in evaluating relative settlement offers in finding the City was the prevailing party. We directed the trial court, on remand, to "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and

7

similar sources.' [Citation.]" (*Id*. at p. 965.) We further explained Waterwood did not achieve a " ' "simple unqualified win" ' " because it "did not recover all its damages on its contract claim against the City . . . ." (*Ibid*.) We concluded the trial court (Judge Madden) abused its discretion in awarding attorney fees to the City because it relied on unsupported facts and improper legal criteria, and failed to consider the controlling legal standard. (*Id*. at pp. 966–970.) We also acknowledged, "[T]here was only one contract claim, and Waterwood was the only party that obtained relief," as well as the fact that the jury "rejected all its [the City's] affirmative defenses." (*Id*. at p. 971.) Accordingly, the City could not be the prevailing party, but on remand, the trial court would have discretion to find either that Waterwood was the prevailing party or there was none. (*Id*. at p. 972.) We reversed the judgment only insofar as it required Waterwood to pay the City's attorney fees. (*Ibid*.) Finally, we directed that Waterwood was entitled to its costs on appeal. (*Ibid*.)

5. ***Pursuant to Waterwood's Code of Civil Procedure section 170.6 challenge to Judge Madden, the case was reassigned***

Upon remand, Waterwood exercised a peremptory challenge against Judge Madden and the case was reassigned to Judge Kim. Waterwood then filed two separate motions, one of which requested attorney fees and costs for *Waterwood I*, and the other requested attorney fees and costs for the litigation in the trial court.

8

## 6. *Waterwood's motion for attorney fees and costs on appeal*

In its motion requesting attorney fees and costs incurred in *Waterwood I*, Waterwood argued, "Plaintiff is entitled to recover all of its reasonable attorneys' fees and costs incurred on appeal, and the only significant issues to be decided on this motion are the amount of the award." Waterwood contended because in *Waterwood I*, this court awarded it costs, the trial court must "affirm that Plaintiff was the prevailing party on the appeal and determine the amount of fees and costs to award."

Waterwood sought attorney fees and costs totaling $71,461 plus an additional $10,000 in estimated fees for the cost of litigating the fee motion. According to Waterwood, "The rates charged and hours spent were reasonable as demonstrated by the evidence before the Court, including bills and descriptions of the work performed every day." Waterwood also attached to its motion a memorandum of costs on appeal indicating that the costs totaled $6,102.52.

## 7. *Waterwood's motion for attorney fees based on litigation in the trial court*

In its motion requesting attorney fees and costs incurred in the trial court, Waterwood requested $347,719.50 in fees and $4,246.33 in costs not previously considered. Waterwood argued it was the prevailing party reasoning that the complaint alleged a single cause of action for breach of lease, which caused damages in an amount according to proof, but believed to be in excess of $150,000. The answer alleged 18 affirmative defenses, all of which the jury rejected.

9

Waterwood represented that it asked the jury for $235,000 "to cover past and future repairs," and that the City asserted nothing was due. Waterwood cited only its attorney's declaration in support of this contention. Waterwood's counsel averred, "At opening statement, *although I do not have a transcript*, my notes reflect that *I planned to say* that Waterwood had spent $13,568 repairing the roof, $26,788 repairing the HVAC system, $4,000 on the collapsed wall, $10,063 for the skylight, $70,055 on the asphalt, and $6,584 on the concrete, and with remaining repairs the eventual total repair cost would be $235,000." (Italics added.)

In the same declaration, Waterwood's counsel stated, "Defendant denied breaching the lease, denied any obligation to do more repair or maintenance than it did, and denied causing damages or that Plaintiff suffered damages by any breach." According to counsel, "In opening statement, according to my notes and my recollection, Defendant denied any liability whatsoever [and] suggested that it was entitled to a defense verdict. I do not have a transcript of opening statement or closing arguments."

Waterwood's counsel described the 10-day trial as follows: "[W]e appeared for trial on April 23 and 24 for pretrial matters, conducted jury selection and opening statements on April 25, and presented the testimony of our client's principal, Jerry Nininger, on April 26th. On April 27, we completed the testimony of Mr. Nininger, and the Court received testimony from Mr. Prudencio Rivera (the current tenant), and Sgt. Daniel Barkwill of the Long Beach Police Department (who was taken out of order pursuant to stipulation). On April 30 we completed the testimony of Mr. Rivera and received the testimony of Elena Barnett (a City employee who worked at the Property) and Steve

Abraham (Waterwood's realtor). Trial on May 1 was devoted to the expert testimony of Plaintiff's industry expert John Gebhardt, and the City's engineering expert Mark Reiser (taken out of turn to accommodate his schedule). We attended trial on May 2 when Plaintiff's construction and cost expert Pete Fowler testified, and on May 3 when the City called City Engineer Sean Crumbly, Tom Wilkinson, Matthew Brookes, and Kurt Schilling. The parties gave their closing arguments on May 7."

Waterwood requested that the "Court [Judge Kim] award Plaintiff all of its attorney fees and costs through trial, in the amount of $347,719.50 plus additional costs from the trial that have not previously been considered and ruled upon in the sum of $4,246.33 through February 2019, [and] attorney's fees and costs incurred to bring and argue this motion, and interest on all of the foregoing."

In its motion, Waterwood argued it was the prevailing party because, "even where . . . Plaintiff requested more than it recovered, . . . that can be only a small part of the analysis, and cannot overcome the fact that the City wrongly denied any liability." Waterwood also argued that its attorney fees were reasonable.

Waterwood subsequently amended its motion to request $361,573.50 in attorney fees, $4,246.33 in costs incurred prior to *Waterwood I*, and an additional $3,512 to file its reply and argue the fee motion.

### 8. *The City's opposition*

The City argued that Waterwood was not the prevailing party and that Waterwood's fees were unreasonable. According to the City, the trial court had already concluded that Waterwood did not obtain the greater relief at trial. The City argued that

Waterwood "fallaciously impl[ies] that the Court of Appeal found it to be the prevailing party." The City also contended it "achieved its main pre-litigation and litigation objective: to pay Plaintiff for some, but not all, of the claimed repairs." It asserted the "wisdom of the trial judge, who presided over the 10-day trial and heard all of the parties' evidence and argument is presumed to be correct." The City added, "Plaintiff's attorney's fees request—which is nearly 10 times the amount of the jury award—is not only unreasonable, it is unconscionable." (Boldface omitted.)

### 9.      *The new trial court held a hearing*

At a hearing on Waterwood's motions before Judge Kim, Waterwood argued, "[T]here is now no question that [the City] did breach the lease. And, yet, the City at all times took the position that it did not breach the lease. It said it was not liable for any damages whatsoever, and the only way . . . the plaintiff in this case could recover anything close to what it was entitled to was to go to trial." Counsel further contended Waterwood was not "disqualif[ied]" from being the prevailing party because it recovered less than the amount requested and Waterwood had recovered a net monetary relief. Waterwood's counsel also counseled that the trial court could not adopt Judge Madden's statement of decision because this court had reversed Judge Madden's finding that the City was the prevailing party and the resulting incorrect award of attorney fees to the City in *Waterwood I*.

In response to the latter argument, the trial court stated, "[T]he court will not consider factors that Judge Madden consider[ed] which the Court of Appeal held to be [an] abuse of power. Namely, the court will not consider [evidence] relating to

12

the City making a [$]40,000 998 offer.  The court will not consider that the City had admitted that it needed to make certain repairs and that the jury by circumstantial evidence accepted that. Third, that the court [Judge Madden] found the ultimate recovery was so shy of the amount requested at trial as to be a win.  The court [Judge Kim] will not consider that in determining whether or not plaintiff was the prevailing party.  [¶]  However, the court will consider other evidence and other findings made by Judge Madden to decide whether or not, one, if there is a prevailing party or if there is no prevail[ing] party . . . ."

### 10.    *Judge Kim denies both motions for attorney fees*

In an order denying Waterwood's motion for attorney fees, the trial court stated, "Plaintiff, in its complaint, sought to recover damages in the amount of $150,000.  [Citation.]  While the exact mechanism is not clear, it appears all parties agree Plaintiff ultimately sought damages in the amount of $235,000 at trial."  On appeal, the appellate court did not find Waterwood was the prevailing party but instead "indicated the trial court has the discretion, on remand, to determine EITHER (a) Plaintiff is the prevailing party, OR (b) there is NO prevailing party.  The Court of Appeal[ ] articulated the standard to be applied in making this determination."

The court cited with deference Judge Madden's finding that the City " 'clearly succeeded on its claims at trial, while Waterwood did not . . . .' "  "This Court [Judge Kim] agrees that, under the circumstances, Plaintiff did not achieve its main litigation objective, and should not be declared the prevailing party.  As expressly permitted by the Court of Appeal[ ], this Court finds there is no prevailing party in connection with the primary litigation."

13

Relying on *Wood v. Santa Monica Escrow Co.* (2009) 176 Cal.App.4th 802, 807–808, the trial court also found Waterwood was not entitled to attorney fees incurred in pursuing *Waterwood I* because Waterwood did not prevail overall even though Waterwood was successful in reversing an award of fees to the City.  The court entered a separate order denying Waterwood's attorney fees on appeal.  The court did not grant or deny Waterwood's request for costs from *Waterwood I*.

## DISCUSSION

### A. The Record on Appeal is Limited and We Deny the City's Request to Augment the Record to Consider Documents Not Before the Trial Court When it Made its Prevailing Party Determination

To recap, in *Waterwood*, we directed the trial court to evaluate whether Waterwood prevailed on the contract by comparing " 'the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.' [Citations.]" (*Waterwood I, supra*, 58 Cal.App.5th at p. 972.)  Waterwood provided the trial court with the pleadings.  According to Waterwood, no trial briefs were filed.  Waterwood did not provide a transcript of the trial.  Waterwood objected to the City's proffer of the transcript of opening and closing statements on the basis that the transcript was uncertified and incomplete.  There is no indication that the trial court relied on transcript excerpts attached to the City's  opposition.

On appeal, Waterwood states it is incorporating by reference the record in *Waterwood I* (see Cal. Rules of Court,

14

rule 8.124). Waterwood, however, did not provide that record to the trial court on remand. Waterwood makes no legal argument supporting the proposition that this court should evaluate the trial court's order based on evidence not provided to the trial court.[2] With the exception of Judge Madden's statement of decision,[3] we do not consider the record on appeal from *Waterwood I*. Instead, we rely exclusively on the documents Waterwood provided to the trial court. (See fn. 2, *ante*.)

For the same reasons, we deny the City's motion to augment the record to include the reporter's transcript from trial. The trial court did not have the trial transcript in making its prevailing party finding, and the City makes no showing and offers no legal support for the proposition that this court may consider such new evidence on appeal. Because we deny the City's motion to augment the record to include the reporter's

---

[2] The following were the exhibits in support of Waterwood's motion for attorneys' fees and costs on appeal: the decision in *Waterwood I*, the complaint, the judgment, the amended judgment, attorney invoices and bills, a chart of fees and costs incurred, an expense report, and a memorandum of costs on appeal. Waterwood attached the following exhibits in support of its motion for attorney fees: the opinion in *Waterwood I*, the complaint, the judgment, the amended judgment, invoices an bills, a chart of fees and costs, an expense report, the government claim for damages against the City of Long Beach, a public records request form, the joint statement of the case, and the answer to the complaint filed by the City.

[3] We have reviewed Judge Madden's statement of decision because Judge Kim's order makes clear that he considered it. Waterwood also relies on that statement of decision, and we could not evaluate Waterwood's claims of error without reviewing it.

transcript, we need not address Waterwood's objections to the transcript itself.

## B. Waterwood Demonstrates No Abuse of Discretion In The Trial Court's Conclusion That There Was No Prevailing Party in the Trial Court Litigation

### 1. *The trial court acted within its discretion in finding no prevailing party*

We concluded in *Waterwood I* that the City could not be the prevailing party and remanded the matter to the trial court to determine in its discretion whether Waterwood prevailed or no one did. (*Waterwood I*, *supra*, 58 Cal.App.5th at p. 972.) The trial court then exercised its discretion and found no party prevailed. We review that determination for abuse of discretion. (*Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38, 43.) " ' "The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]" ' [Citation.] The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)

Waterwood once again argues it "clearly prevailed at trial" because it received a $45,050 award on a single cause of action for breach of contract and defeated all of the City's affirmative

16

defenses.[4]  This argument is inconsistent with *Waterwood I*, in which we acknowledged these facts but also that the trial court would have had the option of finding no prevailing party. (*Waterwood I*, *supra*, 58 Cal.App.5th at p. 972.)  The question before us is whether the trial court abused that discretion.

The record supports the trial court's exercise of its discretion to conclude that no party prevailed.  In his declaration, Waterwood's counsel averred he "planned" to tell the jury that Waterwood spent $13,568 repairing the roof, $26,788 repairing the HVAC system, and $70,055 repairing the asphalt and that "remaining repairs might increase the total repair cost to $235,000."  Additionally, Waterwood's expert claimed that the City owed Waterwood $224,000 for repairs of various items including the masonry structure, roof, HVAC, electrical issues, paving, concrete, and undescribed fences, gates, and walls.  In addition to the cost of repair for these items, Waterwood's expert opined the City was responsible for contractor's overhead, contractor's profit, insurance, a bond, a "contingency on

---

[4]  Waterwood notes that it also received costs of almost $20,000 and assumes that the costs should be added to the jury award when assessing whether Waterwood achieved its litigation objective for purposes of determining the prevailing party.  Waterwood offers no authority supporting the proposition that the costs awarded to the party with the net monetary recovery (Civ. Code, § 1032) are relevant in assessing whether a party achieved its objective in the litigation for purposes of Civil Code section 1717.  Issues that are not raised or supported by argument and citation to legal authority are forfeited.  (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600, disapproved on another ground in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011.)

17

construction costs," construction management, architectural design, engineering design, testing and inspection and permits and fees. (Capitalization omitted.) This evidence confirms that not only did Waterwood obtain a jury verdict far shy of its repair costs request, but also that its requested damages were for multiple items as to its singleton breach of contract claim. Although the jury's verdict does not reveal the components of its $45,050 award, the mere amount of that award indicates the jury rejected many of Waterwood's requested damages.

Also, in seeming disregard for our holding in *Waterwood I*,[5] Waterwood states that the City "litigated in full force, stonewalled early settlement efforts, and drove Waterwood to incur significant attorney's fees before making a settlement offer of any substance. [Citation.] Finally, on September 12, 2017, less than five weeks before the trial date . . . , the City served a statutory offer to compromise . . . . " "At that point, with more than $32,000 in fees and $1,500 in costs invested by Waterwood over more than 12 months since the case was filed [citation], the offer was not acceptable." Waterwood also describes at length its demands to the City beginning in 2016. Further, Waterwood's

---

[5] In *Waterwood I*, we explained: "In determining the prevailing party under section 1717, a trial court may not consider the parties' settlement communications. 'Settlement communications are not sources "similar" to "pleadings, trial briefs, [and] opening statements." [Citation.] They were not presented at trial, and we decline to allow their use to establish that defendant's "litigation objectives" were in fact different from the "demands" it made on those claims throughout the litigation.' [Citation.]" (*Waterwood I, supra*, 58 Cal.App.5th at pp. 967–968, quoting *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191, 204.)

briefing has an entire section entitled "Waterwood Beats the City's 998 offer." (Boldface & some capitalization omitted.) As we held in *Waterwood I*, *supra*, 58 Cal.App.5th at pp. 967–968, and Judge Kim recognized at the hearing on Waterwood's motions, settlement demands are irrelevant in assessing the prevailing party for purposes of section 1717.

Waterwood is correct insofar as it argues the fact the jury did not award all its requested damages does not preclude a contractual fee award as the prevailing party. (See, e.g., *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.) As we wrote in *Waterwood I*, " 'Most of the time, attorneys have an incentive to assert the maximal claims possible on behalf of their clients. . . . But if anything less than complete victory means that a client loses what would otherwise have been "prevailing party" status under section 1717, the attorney is crunched into a dilemma. Risk a malpractice suit by *not* asserting maximal claims, or risk a malpractice suit by forfeiting "prevailing party" status under section 1717 *by* asserting maximal claims.' [Citation.]" (*Waterwood I*, *supra*, 58 Cal.App.5th at pp. 971–972, fn. 5, quoting *de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, p. 1296, fn. 5.) Waterwood's argument, however, ignores our standard of review. The fact that a trial court may order a fee award under similar circumstances does not demonstrate that another court abuses its discretion in finding no prevailing party. "That another court might reasonably have reached a different result . . . does not demonstrate an abuse of discretion." (*O'Donoghue v. Superior Court* (2013) 219 Cal.App.4th 245, 269.)

### 2. *Waterwood does not demonstrate Judge Kim relied on improper criteria in finding no prevailing party*

Waterwood argues Judge Kim abused his discretion in relying on Judge Madden's statement of decision, which indicated that the City " 'clearly succeeded on its claims at trial, while Waterwood did not. . . .' "  In fact, it argues Judge Kim found there was no prevailing party solely by deferring to Judge Madden's prior statement of decision, which decision we ultimately reversed.

The record does not support Waterwood's contention that Judge Kim based his decision "solely on deference to the prior statement of decision." (Boldface & capitalization omitted.)  To the contrary, Judge Kim's order indicates that Judge Kim agreed with Judge Madden.  Specifically, Judge Kim stated, "This Court agrees that, under the circumstances, Plaintiff did not achieve its main litigation objective, and should not be declared the prevailing party."

Waterwood, moreover, failed to provide Judge Kim with a transcript of the trial proceedings or other means to assess Waterwood's objectives at trial.  Waterwood's summary of trial revealed only the name of the witnesses and the dates they testified, which would not assist the trial court in assessing whether Waterwood achieved its litigation objectives.  In his declaration, Waterwood's attorney described what he "planned to say" to the jury during opening and described his "notes and [his] recollection" of defendant's opening statement, but the trial court was not required to credit that declaration.

Waterwood itself relies on Judge Madden's statement of decision to describe the evidence at trial.  Specifically, referencing Judge Madden's statement of decision, Waterwood asserts that

the parties contested the following items:  (1) whether the City was required to remove and replace an entire roof, (2) whether the City was required to replace two air conditioners, and (3) whether the City was required to tear up and replace all of the existing asphalt parking lot on the property and nearby concrete pads.  This evidence confirms that Waterwood requested several items of damage, and the jury rejected a good deal of them, although the jury's verdict did not specify which items it rejected.  This evidence also supports Judge Kim's finding that Waterwood did not achieve its litigation objectives and thus no one prevailed where we have previously held that the City could not be the prevailing party.  In sum, Waterwood has not shown that the trial court (Judge Kim) acted outside the confines of the applicable principles of law in relying in part on Judge Madden's statement of decision.  (*City of Sacramento v. Drew, supra*, 207 Cal.App.3d at p. 1297.)

Finally, Waterwood argues that it "should be awarded not only its prevailing party attorney fees in the underlying action, but also interest on those fees."  Because we conclude the trial court did not err in finding Waterwood was not the prevailing party, we need not consider this argument.  Waterwood also seeks $4,246.33 in costs in addition to the $19,905.04 awarded in the amended judgment prior to *Waterwood I*.  In *Waterwood I*, which is now final, we affirmed the judgment insofar as it awarded $19,905.04 in costs to Waterwood.  Waterwood also does not show that its request for additional costs is cognizable in this appeal.

## C. Waterwood Is Not Entitled to Attorney Fees for *Waterwood I*

Waterwood argues the trial court erred in denying it appellate fees incurred in *Waterwood I* because it was the prevailing party on that appeal. We agree that Waterwood successfully reversed a $230,000 contractual fee award in favor of the City. Relying on *Wood v. Santa Monica Escrow Co.* (2009) 176 Cal.App.4th 802, 807–808 (*Wood*), the trial court (Judge Kim) concluded Waterwood was not entitled to fees incurred in *Waterwood I*. We review de novo the trial court's determination that as a matter of law, Waterwood was not entitled to fees for *Waterwood I*. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

Our district has issued two opinions on point. In *Wood*, Division Six held, "A party who prevails on appeal is not necessarily the prevailing party in an action." (*Supra*, 176 Cal.App.4th at p. 804.) *Wood* involved a plaintiff who voluntarily dismissed the complaint against the defendant with prejudice. (*Id*. at p. 802.) The trial court denied the defendant's motion for contractual attorney fees, and the appellate court affirmed that denial. (*Id*. at pp. 804–805.) The plaintiff then sought attorney fees, purportedly as the prevailing party, because it had won the appeal. (*Id*. at p. 805.) The appellate court rejected plaintiff's request and stated, "[T]he trial and appeal are treated as parts of a single proceeding" and the defendant was the prevailing party "in the lawsuit considered as a whole." (*Id*. at pp. 804, 806.) In the words of our colleagues, "[S]ection 1717 does not support an award to the prevailing party on appeal, but only to the prevailing party in the lawsuit." (*Wood*, at p. 808.)

22

In *de la Carriere v. Greene* (2019) 39 Cal.App.5th 270 (*Greene*), decided by Division Eight, respondent de la Carriere filed a complaint seeking to void a note and deed of trust; Greene filed a cross-complaint for breach of the note. After a bench trial, the trial court found respondent's claims meritless and awarded monetary relief in Greene's favor after subtracting usurious interest payments. The trial court then awarded Greene contractual attorney fees as the prevailing party. Greene, however, appealed the trial court's damages calculation. After Division Eight questioned whether Greene could do so after executing an acknowledgement of satisfaction of judgment, Greene dismissed the appeal.

On remand, the trial court awarded respondent attorney fees she incurred on the appeal. The issue before our colleagues was whether the trial court erred in finding her the prevailing party. Relying on *Woods*, Division Eight held, "The trial court determined that Greene was the prevailing party in the lawsuit after finding he defeated Carriere's claims and obtained affirmative relief on the cross-complaint. Carriere's subsequent success on appeal and her postjudgment motion did not affect that determination. Indeed, both before and after appeal, Greene received a net judgment of $150,329.21. Consequently, he recovered the 'greater amount on the action on the contract' and remains the prevailing party for purposes of Civil Code section 1717. As such, he is the only party entitled to attorney fees under the Note. The trial court erred in finding otherwise." (*Greene, supra*, 39 Cal.App.5th at pp. 276–277.) Division Eight also rejected respondent's argument that the award of costs on appeal established "conclusively" that respondent was the prevailing party. (*Id*. at p. 277.)

23

Here, as in *Wood* and *Greene*, *Waterwood I* did not decide who prevailed in the lawsuit.  Instead, we remanded the case to the trial court to make that determination.  The trial court concluded no party prevailed, and did not abuse its discretion in doing so.

**D.    Costs for *Waterwood I***

In *Waterwood I*, we concluded Waterwood was entitled to its costs on appeal.  After remittitur issued, Waterwood filed a memorandum of costs on appeal requesting $6,102.52 in costs.  The City did not oppose that request.  Under the applicable California Rules of Court, the clerk of the court should have entered a judgment on the costs in the amount of $6,102.52.[6] (See Cal. Rules of Court, rule 8.278 [describing the procedure for claiming costs ordered by the appellate court and referencing rule 3.1700]; Cal. Rules of Court, rule 3.1700(b)(4) ["After the time has passed for a motion to strike or tax costs or for determination of that motion, the clerk must immediately enter the costs on the judgment."].)  Waterwood is entitled to costs of $6,102.52.

Waterwood also argues it is entitled to interest from the date of remittitur on the costs this court awarded in *Waterwood I*.  We do not agree.  Waterwood is not entitled to interest from the date of the remittitur.  Waterwood relies in part on *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 138.  *Lucky* concerned attorney fees incurred in preparing an

---

[6] The City does not dispute that it owes Waterwood costs incurred in *Waterwood I*.  The City argues Waterwood was required to send the clerk a proposed judgment.  The authority cited by the City—California Rules of Court, rule 3.1700(b)(4)—does not contain any such requirement.

abstract of judgment and judgment liens and costs after judgment. (*Id.* at p. 136.) Those issues are not relevant here. But, *Lucky* also considered the appellate court's order of costs on appeal: "If an appeal is taken from the judgment, the party prevailing in the Court of Appeal is usually entitled to costs on appeal. [Citation.] The award of costs is included in the remittitur, although the amount of the award is determined in the trial court. [Citation.] These costs, however, are not added to the trial court judgment, but constitute a separate judgment. [Citations.] Interest thereon begins to run from the date of the entry of the trial court's award."[7] (*Lucky*, at p. 138.) We also reject Waterwood's argument that it is entitled to $7,983.41 in

_____

[7] We rely on *Lucky* only insofar as it discusses the costs on appeal awarded by an appellate court. *Felczer v. Apple Inc.* (2021) 63 Cal.App.5th 406, limited *Lucky* on an issue irrelevant to the current appeal. *Felczer* explained that *Lucky* involved an assessment of the date of the judgment "in a context where the prevailing plaintiff's entitlement to attorney's fees" for filing an anti-SLAPP motion "was clear." (*Felczer*, at p. 414.) In *Felczer,* in contrast, it was unclear at the time of judgment whether the prevailing party would recover any fees. (*Ibid.*) *Felczer* held "in a civil case where the prevailing party is entitled to recover certain litigation expenses and attorney's fees from the losing party" the postjudgment interest begins to accrue "on the date of the judgment or order that establishes the right of a party to recover a particular cost item, even if the dollar amount has yet to be ascertained." (*Id.* at pp. 409–410.)

*Felczer* did not involve an appellate court's award of costs incurred on appeal. *Felczer* does not support Waterwood's contention that it is entitled to interest on costs on appeal from the date of the remittitur.

25

costs because that amount exceeds Waterwood's requested costs in its memorandum of costs.

Finally, there is a period of time between the date the trial court should have entered judgment on costs and the date the trial court will enter judgment on costs. It was Waterwood's responsibility as the party entitled to costs on appeal to alert the trial court of the need to enter judgment. (Cal. Rules of Court, rule 3.1700(b)(4).) The City is not liable for interest on the judgment until after the judgment is entered.

## DISPOSITION

The order denying Waterwood attorney fees for the trial court litigation is affirmed. The order denying Waterwood attorney fees for *Waterwood I* is affirmed. The trial court is directed to enter a judgment in the amount of $6,102.52 in favor of Waterwood. Each party shall bear its own costs in this appeal.

NOT FOR PUBLICATION.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

26